NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| M.C.,<br><br>  Plaintiff,<br><br>  v.<br><br>STEVAN HARNAD, *et al.*,<br><br>  Defendants. | Civil Action No. 21-19819 (RK) (JBD)<br><br>**OPINION** |

**KIRSCH, District Judge**

  **THIS MATTER** comes before the Court on Defendant Trustees of Princeton University d/b/a Princeton University ("the Trustees") and Defendant Steven Harnad's ("Harnad") (collectively, the "Defendants") Motion to Dismiss Plaintiff M.C.'s ("Plaintiff") Amended Complaint, (ECF No. 27), pursuant to Federal Rule of Civil Procedure 12(b)(6), (ECF No. 32). Plaintiff filed a brief in opposition, (ECF No. 43), and the Trustees filed a reply brief, (ECF No. 46). The Court has carefully considered the parties' submissions, and resolves the matter without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons set forth below, the Motion to Dismiss is **GRANTED** as to the Trustees and **DENIED** as to Harnad.

**I. BACKGROUND**

  This action involves the allegation that Harnad, of unstated age, for about 18 months beginning around 1970, "groomed" Plaintiff M.C., then eleven years old, and her older sister, N.S., then fourteen years old, and sexually molested them, and that the Trustees failed to protect Plaintiff from Harnad's grooming of Plaintiff which occurred on Princeton's campus. ("Am. Compl.", ECF

No. 27, Count One ¶¶ 1, 4–5.)[1] The minor Plaintiff lived in Princeton Township and would gather with friends to socialize on Princeton University's ("Princeton") open to the public campus. (*Id.* at *3.)[2] Plaintiff was not a student of Princeton. (*Id.*) The Amended Complaint describes Harnad as "professor like," but his role, status, and affiliation with Princeton at that time is unclear as the Amended Complaint provides in pertinent part: "Steven Harnad, was a graduate student, teaching assistant, graduate assistant, research assistant and/or student volunteer in the Psychology Department at the University." (*Id.* at *3-4.) Thus, Plaintiff is unclear whether Harnad, during the time-period of the acts of sexual grooming and abuse, was a student, faculty, volunteer or some combination thereof. (*Id.*) In addition, Plaintiff does not set forth Harnad's age at the time of the alleged sexual assault. (*See generally*, Am. Compl.) As discussed in greater detail below, the allegations of "grooming" occurred on Princeton's campus while all of the allegations of Plaintiff's sexual abuse occurred off-campus at Harnad's private apartment. (*Id. at* *4-7.)

It goes without saying that the allegations of sexual abuse by adults against children are of the utmost seriousness and reprehensible, and if true and provable, exposes the wrongdoer to both criminal and civil liability. The questions presented here, through the subject motion, are whether the Plaintiff alleged sufficient facts (1) to allow the lawsuit to proceed against the Trustees for

---

[1] For the purpose of considering the instant Motion, the Court accepts all factual allegations in the Amended Complaint as true. *See Phillips v. Cnty. of Allegheny,* 515 F.3d 224, 228 (3d Cir. 2008).

Plaintiff's Amended Complaint does not include uniquely numbered paragraphs but instead restarts the paragraph numbering for each of the five sections of the Amended Complaint that includes allegations specific to that Count. This adds a layer of confusion for litigation purposes and is not the Court's preference. While Rule 10(b) provides that a "party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances," this Court has discretion to dismiss a complaint when it fails to comply with this rule. Fed. R. Civ. P. 10(b); *see Rosado v. Lynch*, No. 15-3999, 2017 WL 2495407, at *3 (D.N.J. June 8, 2017). In citing Plaintiff's pleading, the Court cites both the section of the Amended Complaint referred to as well as the paragraph number. Where the Amended Complaint's allegations are not contained in numbered paragraphs, the Court cites the CMECF number, denoted by an asterisk.

[2] Now, Plaintiff M.C. is approximately sixty-five years old. Harnad's approximate age at the time of the alleged conduct is unstated and thus his approximate age today is unknown.

failing to prevent or stop the alleged sexual abuse committed by Harnad on a non-student, off campus and (2) to establish a claim for negligent and intentional infliction of emotional distress against Harnad.

The Trustees administered and operated Princeton during this time period. (*Id.*, Count Two ¶ 4.) In June 1970, the Trustees promulgated an "Open Campus" policy, inviting members of the community, including minors "onto [Princeton's] premises to gather and loiter." (*Id.*) Shortly after implementing this policy, Princeton instituted a nighttime curfew in response to increased criminal incidents on campus. (*See* Ex. B to Am. Compl.)

Plaintiff alleges that this "Open Campus" policy induced her and other minors to enter Princeton's premises where she encountered Harnad. (Count Two ¶ 5.) Harnad approached Plaintiff, and her peers, on Princeton's lawn "and gave them marijuana." (*Id.* at *3.) Harnad established a relationship of trust with Plaintiff by talking to her, buying her lunch and inviting her to a vacant classroom where he hypnotized her. (*Id.* at *3-4.) "On another occasion," Harnad brought Plaintiff to his office where he gave her "marijuana to smoke and coaxed her to sit on his lap." (*Id.* at *4.) Harnad "taught Plaintiff [ ] to hold hands." (*Id.* at *5.) Harnad used Princeton's campus, including its facilities and offices, to groom Plaintiff. (*Id.* Count Three ¶ 4.) Harnad picked Plaintiff up from Princeton's campus and drove her to his apartment. (*Id.* at *5.) At the apartment, Harnad forced Plaintiff "to put her mouth on [ ] Harnad's penis while he ejaculated…, [and Harnad] vaginally penetrated Plaintiff's vagina with his penis." (*Id.* at *5.)

Princeton's campus police officers (known as "Proctors") "should have had knowledge of Harnad's propensity for pedophilia" because his grooming behaviors "were open, obvious and

3

noticeable." (*Id.* at *6.)³ The Proctors questioned Plaintiff "on more than one occasion what kind of relationship she had with [Harnad]." (*Id.*) Despite the Proctors' awareness that Harnad was grooming Plaintiff, the Trustees failed to put in place safety protocols or policies to "protect Plaintiff while she was on said premises from predators and pedophiles" like Harnad, which resulted in Plaintiff suffering "severe and permanent emotional and psychological harm and distress." (*Id.* at *11, Count Two ¶ 9, Count Three ¶ 5, Count Four ¶ 3.) Ultimately, Plaintiff alleges that the Trustees, among others, facilitated Harnad's grooming and sexual assault. (*Id.*)

On November 8, 2021, the Trustees removed Plaintiff's Complaint to this Court, (ECF No. 1), and subsequently moved to dismiss the Complaint in its entirety, (ECF No. 9).⁴ On February 17, 2023, the Honorable Georgette Castner, U.S.D.J., granted the Trustees' Motion to Dismiss, holding that the Complaint failed to meet the "fair notice" pleading standard under Federal Rule of Civil Procedure 8(a)(2). (ECF No. 22.) Judge Castner entered an Order dismissing the Complaint (ECF No. 23), but granted Plaintiff leave to amend her complaint to cure the deficiencies identified, specifically that Plaintiff must explain "which specific facts and legal theories support each alleged cause of action, and which cause of action is asserted against each defendant." (ECF No. 22 at 8.)

Accordingly, Plaintiff filed the operative Amended Complaint alleging the following five counts: (1) sexual abuse under the New Jersey Child Sexual Abuse Act ("CSAA") ("Count One"); (2) premises liability against foreseeable risks of harm ("Count Two"); (3) premises liability

---

³ It is unclear why Plaintiff refers to Princeton's security personnel as "Proctors." (Am. Compl. at *5.) As defined in the American Heritage Dictionary, a proctor is "a supervisor especially of an examination or dormitory in a school." Am. Heritage Dictionary of the Eng. Language (5th ed. 2015). The Plaintiff alleges that the individuals named as "Proctors" were campus police, who function more like security guards than proctors.

⁴ The Complaint in this case was filed on October 26, 2021, in the Superior Court of New Jersey, Law Division, Mercer County. (ECF No. 1 at 1.)

4

against foreseeable criminal acts ("Count Three"); (4) negligent supervision ("Count Four"); and (5) intentional and negligent infliction of emotional distress ("Count 5"). (*See generally* Am. Compl.) Plaintiff alleges Counts Two through Five against the Trustees and Counts One and Five against Harnad. (*Id.*) The Trustees move to dismiss Counts Two through Five of the Amended Complaint against them in their entirety. (ECF No. 32.) Harnad joined the Trustees Motion to Dismiss Counts Two through Five, despite only being named in Counts One and Five of the Amended Complaint. (ECF No. 40.)

Generally, Plaintiff's action would be barred through application of the statute of limitations; however, in 2019, the New Jersey Legislature created a two-year revival window, commencing on the effective date of the legislation, for parties to bring such time-barred actions based on sexual abuse. *See* N.J.S.A. 2A:14-2b(a). Plaintiff's Amended Complaint cites and relies on this statute and thus the action is not time-barred. (Am. Compl., Count Two ¶ 2.)

## II. LEGAL STANDARD

For a complaint to survive dismissal under Federal Rule of Civil Procedure 12(b)(6), it must contain sufficient factual matter to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* However, allegations that are "no more than conclusions" may be disregarded. *Id.* at 679. Restatements of the elements of a claim are legal conclusions, and therefore, are inadequate alone to survive dismissal. *See Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011). The court accepts allegations in the complaint as true and gives the plaintiff "the benefit of every favorable inference

to be drawn therefrom." *Kulwicki v. Dawson*, 969 F.2d 1454, 1462 (3d Cir. 1992).[5]

## III. DISCUSSION

Defendants' Motion to Dismiss does not discuss Count One against Harnad. (*See generally,* ECF No. 34.) Thus, Count One survives against Harnad. *See Jeannot v. Phila. Housing Auth.,* 356 F.Supp.3d 440, 449 (E.D. Pa. 2018) (noting defendants that did "not move to dismiss the perceived disability claim from [plaintiff's] Second Amended Complaint" and thus the claim survives). The Trustees move to dismiss Plaintiff's Amended Complaint for failing to allege sufficient facts to state a claim on each of the four counts alleged against them. The Trustees' arguments on each count largely turn on their contention that they owed no duty to Plaintiff because Harnad's sexual assault of Plaintiff was not foreseeable. The Court considers Harnad's arguments as to Count Five, which is the only other count alleged against him in the Amended Complaint. (Am. Compl., Count Five ¶ 2.) The Court addresses each of the claims against the Trustees and Harnad in turn.[6]

### 1. COUNTS TWO AND THREE – PREMISES LIABILITY

Plaintiff contends that because she was an invitee on Princeton's campus, the Trustees owed Plaintiff a duty to protect her against foreseeable criminal acts of third parties. (ECF No. 43 at 14.) Specifically, Plaintiff argues that Harnad's sexual abuse was foreseeable because "the red flags and notice were present" to Proctors on Princeton's campus of Harnad's grooming, and the Proctors even asked Plaintiff about her relationship with Harnad on multiple occasions. (Am.

---

[5] Plaintiff also argues that the Amended Complaint sufficiently establishes her claims because it satisfies New Jersey's liberal pleading rules. (ECF No. 43 at 11.) However, the Amended Complaint must comply with federal pleading standards, which are more stringent than the state pleading requirements. *Compare Iqbal,* 556 U.S. at 678 *with Green v. Morgan Properties,* 73 A.3d 478, 490 (N.J. 2013). Thus, the Court will, and must apply federal pleading standards.

[6] The law of the forum state governs diversity actions. *See Erie R.R. Co. v. Tompkins,* 304 U.S. 64 (1938); *Am, Cyanamid Co. v. Fermenta Animal Health,* 54 F.3d 177, 180 (3d Cir. 1995.) Thus, in analyzing the parties' legal arguments regarding state law, the Court will look to New Jersey law.

Compl. at *6.)[7] In addition, the occurrence of several other crimes—two robberies, one stabbing, and two purse snatchings in a ten-day period—on Princeton's campus following the adoption of the "Open Campus" policy put the Trustees on notice of the occurrence of violent crimes on campus. (*Id.*) The Trustees respond that Harnad's sexual assault of Plaintiff was not foreseeable because the prior criminal acts on Princeton's campus were unrelated to sexual assault. (ECF No. 32 at 12–13.) Further, the fact that the Proctors asked Plaintiff about her relationship with Harnad "alone does not mean that Proctors actually knew about Harnad's alleged conduct." (ECF 46 at 7.) Lastly, the Trustees note that they employed the Proctors to address the crime on campus and that Harnad sexually assaulted Plaintiff off campus at his apartment, not on the Trustees' premises. (ECF No. 32 at 13.)

A plaintiff may bring a negligence claim under a theory of premises liability. *See Jackson-Locklear v. William Patterson Univ.*, No. 16-5449, 2018 WL 1942521, at *3–4 (D.N.J. Apr. 24, 2018). To establish a premises liability claim under New Jersey law, a plaintiff must plead the four elements of a negligence claim: (1) a duty of care; (2) a breach of that duty; (3) actual and proximate causation; and (4) damages. *See Jersey Cent. Power & Light Co. v. Melcar Util. Co.*, 59 A.3d 576, 594 (N.J. 2013). The issue of whether a defendant owes a legal duty to a plaintiff is generally a question of law for the court to decide. *Carvalho v. Toll Bros. & Developers*, 675 A.2d 209, 212 (N.J. 1996). With respect to the duty element in premises liability cases, New Jersey courts have recognized that landowners owe a duty to invitees for the foreseeable criminal acts of third parties. *Butler v. Acme Markets, Inc.*, 445 A.2d 1141, 1144 (N.J. 1982) (holding that business owners have a duty to protect invitees from foreseeable criminal acts of third parties); *see also Peguero v. Tau Kappa Epsilon Local Chapter*, 106 A.3d 565, 573 (N.J. Super. Ct. App. Div. 2015)

---

[7] The Proctors' knowledge, as employees of the Trustees, is imputed to the Trustees. (ECF No. 43 at 22.)

7

(applying the holding in *Butler* to a non-business relationship where defendant fraternity owed a duty to protect a person attending the defendant's party against foreseeable criminal acts). Foreseeability "'is based on the defendant's knowledge of the risk of injury.'" *Vizzoni v. B.M.D.*, 212 A.3d 962, 970 (N.J. Super. Ct. App. Div. 2019) (quoting *J.S. v. R.T.H.*, 714 A.2d 924, 928 (N.J. 1998)). "That knowledge may arise from actual awareness . . . or knowledge may be constructive when the defendant was in a position to foresee and discover the risk of harm." *Id.* After establishing foreseeability of the harm, courts then determine whether "fairness and policy considerations support the imposition of a duty." *Coleman v. Martinez*, 254 A.3d 632, 642 (N.J. 2021) (quoting *Jerkins v. Anderson*, 922 A.2d 1279, 1284 (N.J. 2007)).

Furthermore, the Trustees are immune from simple negligence suits, except with regard to negligent supervision claims, under the Charitable Immunity Act ("CIA"), and thus, Plaintiff must allege gross negligence by the Trustees in maintaining Princeton's campus to survive dismissal.[8] *See K.L. v. Rutgers, State University of New Jersey*, No. 21-1508, 2022 WL 2207830, at *2 (3d Cir. 2022) (holding that plaintiff's negligence claims against a university are barred by the CIA). The CIA "immunizes simple negligence only," and does not bar plaintiffs from "pursuing claims for willful, wanton or grossly negligent conduct."[9] *Hardwicke v. Am. Boychoir School*, 902 A.2d

---

[8] Under the CIA, a "nonprofit corporation [and its trustees] . . . organized exclusively for . . . educational purposes" are not liable for the negligence of any agent or servant of such nonprofit corporation when the plaintiff is a beneficiary of the nonprofit corporation. N.J. Stat. Ann. § 2A:53A-7. The Trustees, as a university organized for educational purposes, meet the statutory definition of a charitable institution under the CIA. *See K.L.*, 2022 WL 2207830, at n. 5 ("[C]olleges plainly meet the statutory definition of a charitable institution under the CIA." (citing *O'Connell v. State*, 795 A.2d 857, 866 (N.J. 2002))). The Plaintiff is a beneficiary of the Trustees. *See Lax v. Princeton Univ.*, 779 A.2d 449, 452 (N.J. Super. Ct. App. Div. 2001) (noting that a plaintiff who uses the facilities of a university, despite not being a student, is still considered a beneficiary of a university "because the use of its facilities by members of the general public serves 'important social and recreational needs of the community'" (*quoting Bieker v. Community House of Moorestown*, 777 A.2d 37, 43 (N.J. 2001))).

[9] In addition, in 2006, the New Jersey Legislature amended the CIA to exclude from charitable immunity, claims of "negligent hiring, supervision or retention" when the plaintiff is a minor and alleges sexual assault. N.J. Stat. Ann. § 2A:53A-7.4.

900, 918 (N.J. 2006); *see also,* N.J. Stat. Ann. § 2A:53A-7. Gross negligence requires the same elements as ordinary negligence, but a plaintiff must plead "something more than 'inattention' or 'mistaken judgment. *Moretz v. Trustees of Princeton*, No. 21-19822, 2023 WL 9017155, at *5 (D.N.J. Dec. 29, 2023); *see also, Doe ex rel. Doe v. Small,* 654 F. Supp. 3d 376, 396 (D.N.J. Feb. 2, 2023) (stating gross negligence is "the failure to exercise slight care or diligence" (quoting *Steinberg v. Sahara Sam's Oasis, LLC,* 142 A.3d 742, 745 (2016))). Accordingly, Plaintiff's premises liability claim hinges on whether it was reasonably foreseeable that Harnad was sexually assaulting Plaintiff and that the Trustees failed to exercise even "slight care or diligence" in the investigation, detection or prevention of Harnad's sexual molestation of Plaintiff. *Doe ex rel. Doe,* 654 F. Supp. 3d at 396 (quoting *Steinberg,* 142 A.3d at 745).

First, this Court must determine whether Plaintiff alleged sufficient facts demonstrating that the Trustees owed her a duty of care, that is, whether the Trustees should have foreseen Harnad's sexual assault of Plaintiff but failed to intervene.[10] Plaintiff claims that the Trustees had constructive knowledge of Harnad's sexual abuse based on the Proctors' questioning Plaintiff, "on more than one occasion what kind of relationship she had" with Harnad. (ECF No. 42 at 19.) The Amended Complaint does not provide how or whether the Plaintiff responded to these claimed inquiries. *(See generally,* Am. Compl.) For example, there is no indication whether she conveyed

---

[10] Traditionally, a landowner's duty in premises liability cases "was dictated by common-law classifications of whether the plaintiff on the premises was an invitee, a licensee, or a mere trespasser." *Peguero,* 106 A.3d at 572; *see also Shelley v. Linden High School,* No. 19-20907, 2022 WL 1284732, at *4 (D.N.J. Apr. 29, 2022) (stating that "landowners owe a duty to guard against dangerous conditions on the property only to invitees."). While Plaintiff argues that she was an invitee, "modern case law has eschewed such rigid categories" in favor of "a more flexible analysis rooted in considerations of reasonable care." *Id.* (citing *Hopkins v. Fox & Lazo Realtors,* 625 A.2d 1110, 1113 (N.J. 1993)); *see also Shelley,* 2022 WL 1284732, at *4 (in a premises liability case, the court abandoned the delineation of the plaintiff's status as an invitee for purposes of determining defendant's duty and instead analyzed the existence of a duty based on a totality of the circumstances, including foreseeability of the harm, fairness and policy considerations.) Accordingly, this Court's analysis focuses on whether the Trustees had constructive knowledge of Plaintiff's sexual assault such that this harm was foreseeable.

9

to the unidentified "Proctor" that she and Harnad were in a romantic/sexual relationship, whether she indicated they were platonic friends, or whether Harnad was an older brother, cousin, or family member. (*Id.*)

In addition, nowhere in the Amended Complaint does the Plaintiff allege that she, or anyone else reported Harnad to anyone at Princeton for his sexually deviant behavior at anytime until the commencement of this lawsuit in October 2021. (*Id.*); *but see Moretz*, 2023 WL 9017155 at *5 (where court found plaintiff sufficiently pled higher standard of gross negligence where complaint alleged defendant university had actual knowledge of teacher's prior sexual misconduct, when two former students reported him to university and university failed to take basic steps to protect plaintiff, a current student in teacher's class, who was later assaulted by the same teacher). While the Court must give the Plaintiff the benefit of all reasonable inferences, here, without more, the simple claimed neutral inquiry by unnamed and otherwise unidentified persons as to the nature of the relationship does not permit the Court to draw any inference – for or against – regarding the Plaintiff's claims. *Kulwicki*, 969 F.2d at 1462 (3d Cir. 1992).

The court notes that Plaintiff's Amended Complaint does not allege that any of the Proctors actually witnessed Harnad's grooming, but that the Proctors should have known of Harnad's grooming because it occurred "in plain sight of the Proctors." (Am. Compl. at *5.) However, many of Plaintiff's allegations of grooming (*e.g.* when Harnad hypnotized Plaintiff and had her sit on his lap) occurred out of public view in a classroom or Harnad's office, while the behavior that occurred in plain sight consisted of Harnad eating lunch with her, giving her marijuana on one occasion, and talking. (*Id.* at *3-5.) Plaintiff then alleges that Harnad's "predatory behavior" of "sitting, talking, and walking with Plaintiff" was so "open, obvious and noticeable" that the Proctors should have been aware of these red flags and stopped Harnad's sexual assault. (*Id.* at

*6.) This means the Proctors' constructive knowledge of Harnad's pedophilia is based on Harnad's "sitting, talking, [and] walking" with Plaintiff, which are all activities that, without actual knowledge of Harnad's sexual impurities, are non-sexual in nature. (*Id.*) The Proctors' failure to investigate Harnad based on the grooming allegations that occurred in plain sight, at most, constituted misjudgment or inattention. *See Moretz,* 2023 WL 9017155 (explaining gross negligence requires plaintiff to plead "something more than 'inattention' or 'mistaken judgment.'") Accordingly, the Plaintiff's Amended Complaint fails to include sufficient details to establish the more stringent standard of gross negligence, whereby the Plaintiff must show the Trustees actions constituted more than just inattention or misjudgment as to the Plaintiff. *See Moretz,* 2023 WL 9017155 at *5; *Doe ex rel. Doe,* 654 F. Supp. at 396.

The Amended Complaint's allegations of grooming that occurred in plain sight and the Proctors' questioning, without more, fail to show that the Proctors had constructive or actual knowledge that Harnad was sexually abusing Plaintiff. *See G.A.-H,* 210 A.3d at 917 (where plaintiff sued defendant, a co-worker of plaintiff's abuser, for failing to report abuse because defendant knew, or should have known, plaintiff was being abused on account of defendant allegedly seeing a naked photo of plaintiff on co-workers phone and hearing co-worker discuss his young girlfriend, and court held such "facts do not establish that [defendant] knew [co-worker] was engaged in a sexual relationship with minor [plaintiff]."); *see also Peguero,* 106 A.3d at 565 (holding that defendant fraternity had no duty to the plaintiff to protect against the independent crime of a third party because "there was no previous pattern of criminal conduct at the fraternity members' house that would have or should have alerted the individual defendants that an unknown third-party would pull out a gun and shoot at another guest in the backyard"); *Jackson-Locklear,* 2018 WL 1942521, at *4 (finding that defendant fraternity was not aware of assailant's sexual

assault of plaintiff at defendant's party because defendant was not "aware that [plaintiff's] assailant was a risk to women" or of any "prior improper conduct by the assailant").[11]

Next, the Court turns to Plaintiff's argument that the several incidences of violent crime on Princeton's campus following Princeton's adoption of the "Open Campus" policy made the occurrence of sexual assault foreseeable. (ECF No. 42 at 17–18.) "New Jersey courts look to knowledge of prior similar offenses and awareness of prior threats or acts of violence to assess if a risk of harm is reasonably foreseeable in instances of third-party criminal acts." *Shelley*, 2022 WL 1284732, at *4 (citing *Coleman*, 254 A.3d at 642). Plaintiff cites *Clohesy v. Food Circus Supermarkets, Inc.*, where the Supreme Court of New Jersey considered prior lesser criminal acts on the property and surrounding area, the nature of the premises, the lack of a security guard, and national crime statistics in the area to determine that the abduction and murder of the elderly plaintiff was reasonably foreseeable and imposed a duty of care on the defendant. 694 A.2d 1017, 1023 (N.J. 1997.) Plaintiff cites *Clohesy* to argue that "foreseeability can stem from prior criminal acts that are lesser in degree than the one committed against a plaintiff," and thus, the robberies, purse snatchings, and stabbing on Princeton's campus were sufficient to put the Trustees on notice that a sexual assault could occur. (ECF No. 43 at 17.)[12]

---

[11] Plaintiff has failed to cite to any precedential New Jersey case with analogous circumstances to support the holding that a university has a duty to protect a non-student from unforeseeable criminal acts which occurred off campus. (ECF No. 43 at 14) (citing only to *Clohesy*, *Trentacost*, and *Braitman* to support Plaintiff's argument that a duty exists in the instance case, yet such cases involved landlord-tenant or patron-business owner relationships, not a university and non-student (*see Clohesy*, 694 A.2d at 1023; *Trentacost v. Brussel*, 412 A.2d 436, 445 (N.J. 1980); and *Braitman v. Overlook Terrace Corp.*, 346 A.2d 76, 84 (N.J. 1975)).)

[12] The instant case is distinguishable from *Clohesy* because the Trustees employed Proctors, i.e. security officers, to monitor the premises and implemented a curfew in the face of rising crime rates. (*See* Ex. B to Am. Compl.) In contrast in *Clohesy*, one of the factors the court considered was the defendant's failure to implement any security measures in the parking lot despite an uptick in crime. *See Clohesy*, 694 A.2d at 1019.

While the crime statistics on Princeton's campus should be considered under the totality of the circumstances approach, "no New Jersey court has ever found that such information, standing alone, is sufficient to find that an offense is reasonably foreseeable to a defendant." *Jackson-Locklear,* 2018 WL 1942521, at *4 (citing *Peguero,* 106 A.3d at 565). The unrelated spree of criminal incidences – involving property crimes and other non-sexual violence – on Princeton's campus do not establish the Trustees' constructive knowledge of sexual assault, and thus does not make Harnad's criminal acts foreseeable. *Shelley,* 2022 WL 1284732 at * 4 (holding that the passage of legislation addressing child sex abuse, "along with a general increase in public awareness surrounding child abuse, do not establish that" plaintiff's alleged child sex abuse is reasonably foreseeable"); *see also Jackson-Locklear,* 2018 WL 1942521, at *4 (citing *Peguero,* 106 A.3d at 565).

While Plaintiff alleges that the Trustees committed "gross negligence [and] recklessness" by failing to investigate Harnad, the Amended Complaint is devoid of facts that suggest the Trustees acted with such scant care towards the Plaintiff considering the Trustees employed campus security, instituted a curfew following reports of violence, and the Proctors approached Plaintiff to confirm the nature of her relationship with Harnad. (Am. Compl. at *6; Ex. B); *see also Bass v. House of Prayer Cogic of Orange,* No. A-1284-20, 2021 WL 6132768 (N.J. Super. Ct. App. Div. 2021) (a plaintiff may not "circumvent or avoid the protection given by the [CIA] merely by making unspecified allegations of gross negligence" lest the CIA be rendered "so ineffective as to be virtually meaningless" (quoting *Monaghan v. Holy Trinity Church,* 646 A.2d 1130, 1136 (N.J. Super. Ct. App. Div. 1994))).

Further, while Plaintiff argues that Harnad's grooming took place on Princeton's campus, thereby enabling the sexual assault, the actual sexual assault occurred off premises. *K.G. v. Owl*

*City*, No. 17-8118, 2018 WL 6705679, at *6 (D.N.J Dec. 20, 2018) (holding that band management and other members of band could not be liable for the conduct of a single bandmember despite bandmember using concerts to lure minor victim who bandmember sexually assaulted off premises of concert because the assault was unforeseeable and the band and band management owed no duty to the minor victim for conduct that occurred outside concert venue); *see also See W.H. v. R.C.*, No. 19-13548, 2020 WL 1041390, at *4 (D.N.J. Mar. 4, 2020). Accordingly, Plaintiff's premises liability claims, Counts Two and Three, are dismissed.[13]

### 2. COUNT FOUR – NEGLIGENT SUPERVISION

Similar to her premises liability claim, Plaintiff argues that she sufficiently established a negligent supervision claim because the Trustees knew or should have known that Harnad posed a threat to Plaintiff. (ECF No. 43 at 21.) The Trustees respond similarly to this claim as they did for Counts Two and Three, *supra*, that the Amended Complaint is devoid of facts showing that Trustees knew or had reason to know of Harnad's sexual assault. (ECF No. 32 at 14.)

To establish a negligent supervision or training claim, "the plaintiff must prove that (1) an employer knew or had reason to know that the failure to supervise or train an employee in a certain way would create a risk of harm and (2) that risk of harm materializes and causes the plaintiff's damages." *G.A.-H.*, 210 A.3d at 916. Because these claims are separate from the theory of *respondeat superior*, an employer's "liability for negligent supervision may properly be based on actions taken by an employee outside the scope of their employment." *Simonson v. Formisano*, No. 20-20480, 2021 WL 2221328, at *5 (D.N.J. June 1, 2021).

---

[13] The parties' briefs focus on the existence of the Trustees' duty to Plaintiff with regard to Counts II, III, and IV. (*See generally* ECF Nos. 32, 43, 46.) The Trustees do not challenge the Amended Complaint's allegations regarding the remaining elements of a negligence claim (i.e. breach of a duty, proximate cause, and injury), and the Court likewise does not address them.

On similar grounds that the Court dismissed Counts Two and Three, Plaintiff's negligent supervision claim also fails to establish that the Trustees knew or had reason to know the risk Harnad posed to the Plaintiff. *See Gjeka v. Delaware Cnty. Comty. Coll.*, No. 12-4548, 2013 WL 2257727, at *13 (E.D. Pa. May 23, 2013) (dismissing negligent supervision claim against college where plaintiff failed to plead facts that professor's conduct was "reasonably foreseeable"); *see K.G.*, 2018 WL 6705679, at *5 (granting motion to dismiss a negligent supervision claim because complaint was devoid of facts "that defendants knew or should have known that employee was unfit or dangerous or could have reasonably foreseen that he would sexually assault a third party"). The Amended Complaint does not establish the Trustees knew or should have known that Harnad was "unfit or dangerous prior to" Plaintiff's allegations. *M.H. by D.H.*, 2020 WL 6281686, at *10; *see also Moretz*, 2023 WL 9017155 at *3 (noting timing is an important part of a negligent supervision claim as the employer must know of the employee's dangerous attribute "before the employee takes the action which causes a plaintiff's injury.") (citing *Westberry v. State Operated Sch. Dist. Of Newark*, Civ. No. 15-07998, 2017 WL 2216395, at *11 (D.N.J. May 19, 2017)). Accordingly, Count Four is dismissed.[14]

### 3. COUNT FIVE – NEGLIGENT AND INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

Plaintiff's negligent infliction of emotional distress ("NIED") claim as to the Trustees is based on the same argument and facts as Plaintiff's premises liability claims in Counts Two and Three—that Trustees owed Plaintiff a duty because the Proctors' questioning of Plaintiff meant

---

[14] To establish a successful negligent supervision claim, Plaintiff must show that Harnad is an employee of the Trustees. *See DiCosala v. Kay*, 450 A.2d 508 (N.J. 1982). Because Harnad's criminal acts were not foreseeable, the Court need not address whether Harnad is an employee of the Trustees for purposes of establishing a negligent supervision claim. However, the fact that Plaintiff could not definitively state that Harnad was an employee of the Trustees is not grounds for dismissing Plaintiff's negligent supervision claim. *See Doe v. Boys & Girls Club of Clifton*, No. 20-3008, 2021 WL 3400862, at *8 (D.N.J. Aug. 4, 2021) (finding plaintiff's negligent supervision claim survived defendant's motion to dismiss even though it might come to light later in discovery that plaintiff's alleged abuser is not defendant's employee).

Harnad's sexual abuse was foreseeable. (ECF No. 43 at 23.) To establish a NIED claim, a plaintiff must show that "defendant's conduct was negligent and proximately caused plaintiff's injuries. The negligence of defendant, however, depends on whether defendant owes a duty of care to the plaintiff, which is analyzed in terms of foreseeability." *Decker v. Princeton Packet, Inc.* 561 A.2d 1122, 1127 (N.J. 1989). Accordingly, this claim fails as to the Trustees for the same reasons as Plaintiff's premises liability claims do. *See* Counts Two and Three, *supra*.[15]

Plaintiff's Amended Complaint alleges that Harnad groomed her and sexually abused her on multiple occasions, resulting in severe emotional distress. (Am. Compl., Count Five ¶ 2.) Plaintiff's allegations establish that Harnad owed Plaintiff a duty to act with reasonable care because it was reasonably foreseeable that Harnad's sexual molestation would result in Plaintiff's emotional distress. *See Decker v. Princeton Packet, Inc.*, 561 A.2d 1122, 1128 (N.J. 1989) (to establish a duty in an NIED claim, a plaintiff must show it is "reasonably foreseeable that the tortious conduct will cause genuine and substantial emotional distress or mental harm to average persons"). Because Plaintiff's Amended Complaint sufficiently establishes that Harnad owed Plaintiff a duty and his tortious conduct caused "genuine and substantial emotional distress" to the Plaintiff, her NIED claim as to Harnad survives. (*Id.*)

To state a claim for intentional infliction of emotional distress ("IIED"), a plaintiff must show that the defendant's conduct was "(1) extreme and outrageous, (2) intentional or reckless, (3) caused emotional distress, and (4) that distress was severe." *Lankford v. Clifton Police Dep't,*

---

[15] Plaintiff's brief does not address her NIED claim under a *respondeat superior* theory of liability. *Shelley,* 2022 WL 1284732 at n. 4. Assuming, *arguendo,* that Harnad were an employee of the Trustees, even under a *respondeat superior* theory, the Trustees are not liable for the torts that their employee committed "beyond the scope of [his] employment." *Brijall v. Harrah's Atl. City*, 905 F. Supp. 2d 617, 622 (D.N.J. 2012); *see also Moody v. Atl. City Bd. of Educ.*, 870 F.3d 206, 216 (3d Cir. 2017) ("[T]he general rule is that sexual harassment committed by [an employee] is not conduct within the scope of employment."). Harnad's off-campus sexual assault of Plaintiff would be characterized as "beyond the scope of his employment." *Id.*

546 F. Supp. 3d 296, 323 (D.N.J. 2021) (citing *Chuy v. Philadelphia Eagles Football Club*, 595 F.2d 1265, 1273 (3d Cir. 1979)). "In order to establish 'extreme and outrageous' conduct, a plaintiff must sufficiently plead factual allegations to show the defendant's conduct was 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Witherspoon v. Rent–A–Center, Inc.*, 173 F. Supp. 2d 239, 242 (D.N.J. 2001).

The Amended Complaint does not allege any facts of the Trustees that meet the "elevated threshold" for finding outrageous conduct. *M.H. by D.H. v. C.M.*, No. 20-01807, 2020 WL 6281686, at *10 (D.N.J. Oct. 27, 2020) (granting defendant school's motion to dismiss plaintiff's IIED claim even when defendant school failed to properly investigate plaintiff's complaint of sexual abuse by her boyfriend at school). Nothing in the Amended Complaint raises to this level of 'extreme and outrageous' conduct by the Trustees, nor does the Amended Complaint suggest that the Trustees intended for Harnad to sexually assault Plaintiff or acted recklessly with regard to Plaintiff. *See Doe ex rel. Doe,* 654 F. Supp. 3d at 401 (dismissing plaintiff's IIED claim because complaint does not allege that defendant knew of plaintiff's abuse); *see also M.H. by D.H.*, 2020 WL 6281686, at *11 (dismissing plaintiff's IIED claim because complaint fails to indicate defendants "recklessly allowed" for sexual assault of plaintiff). Because the Amended Complaint fails to allege "extreme and outrageous" conduct by the Trustees, Count Five is dismissed. *See A.B. for C.D. v. Vineland Bd. of Educ.*, No. 17-11509, 2018 WL 3141831, at *8 (D.N.J. June 27, 2018) (finding school did not act in an "extreme and outrageous" manner for failing to stop one student from sexually assaulting another student during school hours).[16]

---

[16] The Trustees' present two additional grounds for dismissing Plaintiff's Amended Complaint. *First,* the Complaint fails to comply with Rule 10(b) because the Amended Complaint does not list the factual

17

As to Harnad, Plaintiff's claims of Harnad grooming her on Princeton's campus -- giving her marijuana, hypnotizing her, and holding her hand -- and sexually molesting her on multiple occasions constitute "willful, wanton, [and] malicious" conduct that resulted in her severe emotional distress. (Am. Compl., Count Five ¶ 2.); *see Bernard v. Cosby*, 648 F.Supp.3d 558, 575 (D.N.J. Jan. 3, 2023) (finding plaintiff who alleged defendant drugged and sexually assaulted her, causing permanent injuries, sufficiently pled an IIED claim); *see also, Wigginton v. Servidio,* 734 A.2d 798, 801 (N.J. Super. Ct. App. Div. 1999) (finding IIED claim where plaintiff alleged a single incident of sexual harassment coupled with plaintiff's intense reaction). Thus, Plaintiff's claim of IIED against Harnad survives this Motion to Dismiss.

---

allegations in numbered paragraphs. However, this Court has discretion to dismiss a complaint when it fails to comply with Rule 10(b). *See Rosado*, 2017 WL 2495407, at *3.

*Second,* Defendant argues that the 2019 Amendments to the CSAA are limited to sexual abuse claims against defendants who were the direct cause of the abuse or stood in *loco parentis*. (ECF No. 34 at 7.) Because this Court grants the Trustees' Motion to Dismiss on the merits of Plaintiff's negligence claims, the Court need not address these additional arguments. With regard to Harnad, this argument is inapplicable because Plaintiff's Amended Complaint alleges that Harnad directly caused her abuse. (Am. Compl., Count One.)

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss is **GRANTED** as to Counts Two through Five against the Trustees and **DENIED** as to Count Five against Harnad. Plaintiff's claims against the Trustees are **DISMISSED** without prejudice. Plaintiff may file an amended complaint as to the Trustees that cures the deficiencies identified in this Opinion within forty-five (45) days of the date of this Opinion. An appropriate Order will accompany this Opinion.

_____
**ROBERT KIRSCH**
**UNITED STATES DISTRICT JUDGE**

<u>Dated</u>: June 27, 2024