**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| M.C., | |
| Plaintiff, | |
| v. | Civil Action No. 21-19819 (RK) (JBD) |
| STEVAN HARNAD, *et al.*, | **OPINION** |
| Defendants. | |

**KIRSCH, District Judge**

**THIS MATTER** comes before the Court upon the March 19, 2025 Report and Recommendation of the Honorable J. Brendan Day, U.S.M.J. (ECF No. 80, "R&R.") The R&R recommends that the Court deny Plaintiff M.C.'s ("Plaintiff") Motion for Leave to File a Second Amended Complaint. (ECF Nos. 62, 74.) Plaintiff was afforded fourteen (14) days to file any objections to the R&R pursuant to 28 U.S.C. § 636(b)(1)(C), Federal Rule of Civil Procedure ("Rule") 72(b)(2), and Local Civil Rule 72.1(c)(2). She timely filed her Objections on April 2, 2025. (ECF No. 81, "Obj.") On April 16, Princeton opposed Plaintiff's Objections. (ECF No. 83.) Having reviewed the relevant documents and submissions, the Court adopts the R&R in its entirety. Accordingly, Plaintiff's Motion (ECF No. 62, 74) is **DENIED**,[1] and all claims against Defendant Trustees of Princeton University d/b/a Princeton University ("Princeton") are **DISMISSED WITH PREJUDICE.**[2]

---

[1] Plaintiff's Motion to Update and Correct the Case Caption (ECF No. 68) is also **DENIED** as moot. Along with her Objections, Plaintiff filed a Motion to Sever this case from *N.S. v. Harnad*, No. 21-19820, pursuant to Rules 21 and 42. (*See* ECF No. 82.) Although the two cases are related and very similar, they have never been joined. Accordingly, there are no cases to sever and Plaintiff's' motion (ECF No. 82) is **DENIED.**

[2] The Court's Order of June 28, 2024 dismissed all of Plaintiff's claims as to Princeton without prejudice. (ECF No. 49 at 20.) Now that Plaintiff has been denied the opportunity to amend her Complaint, the

## I.    **BACKGROUND**

Plaintiff, who now proceeds *pro se*, presents, through her motion for leave pursuant to Rule 15, a putative Second Amended Complaint ("SAC"), which consists of some 58 pages and 200 paragraphs and names, as Defendants, Harnad, the individual who allegedly sexually molested her as a child, and Princeton. This would mark Plaintiff's fourth complaint—two of which have already been dismissed in written opinions by federal judges. (*See* ECF Nos. 22, 48.) This Opinion, which adopts Judge Day's R&R in full, applies only to claims brought against Defendant Princeton.

In a separate but related case, *N.S. v. Harnad*, No. 21-19820 (D.N.J.), Plaintiff's sister, N.S., represented by counsel, similarly sought to file a second amended complaint, asserting claims against both Harnad and Princeton that are nearly identical to the ones in the present matter. On February 25, 2025, this Court adopted in full Judge Day's R&R which recommended the denial of N.S.'s Motion to file an Amended Complaint. *See N.S. v. Harnad*, No. 21-19820, 2025 WL 600929, at *1 (D.N.J. Feb. 25, 2025). In N.S.'s case, all claims against Princeton have already been dismissed with prejudice. *Id.*

The facts of this case, which commenced in 2021, are familiar to the parties, and the Court therefore only reiterates what is necessary to resolve the pending R&R. Plaintiff M.C. alleges that in the summer of 1970, when Plaintiff was 11 years old, she began to be groomed and sexually assaulted by Defendant Stevan Harnad ("Harnad"). (*See, e.g.*, ECF No. 74, "SAC," ¶¶ 20, 131– 32.) At the time, Plaintiff was a minor who lived in Princeton (*id.* ¶ 20) and met Harnad on Princeton University's campus (*id.* ¶ 175), which was open to the general public (*id.* ¶ 27).

---

previous dismissal as to Princeton is with prejudice. The First Amended Complaint is now operative as to all claims that survive against Harnad.

According to Plaintiff, Harnad sexually assaulted her for approximately 18 months, from the time when she was 11 until she was 13 years old. (*Id.* ¶ 131.) At the same time, Harnad was 25 to 27 years old, (*id.* ¶ 23), and is described as an "agent" of the University who "presented himself as a university authority-like figure," (*id.* ¶ 178) and "had obvious, regular, and consistent access" to classrooms, daily parking, and an office in the University's Psychology Department (*id.* ¶¶ 73, 174). The allegations of sexual molestation are reprehensible: including, but not limited to, digital and vaginal penetration, forced oral sex, Harnad forcing M.C. and her sister, N.S., to "witness[] each other's sexual abuse," Harnad coercing Plaintiff to pose for nude photos, and Harnad inflicting self-harm in response to Plaintiff's threats to end the relationship. (*Id.* ¶¶ 188–90, 192–93.) The SAC acknowledges that the "sexual assaults of Plaintiff, M.C., took place off campus . . ." (*Id.* ¶ 137.)

As set forth below, while the Court concludes, as a matter of law, that Plaintiff has failed to allege sufficient facts to state any claim against Princeton, M.C.'s case nonetheless proceeds against Harnad, whose Motion to Dismiss the Court previously denied. (*See* ECF No. 49.)

According to Plaintiff, Harnad "targeted her" the first day that she stepped foot on Princeton's campus. (*Id* ¶ 175.) Quickly, Harnad "targeted and infiltrated" Plaintiff's group of friends, picked out Plaintiff in particular, and called her "special" and "nymphet." (*Id.* ¶¶ 176–77.) Plaintiff alleges that Harnad "presented himself as a university authority-like figure to the town children," "quickly become popular" with them, and "gained [her] trust" by filling the role of Plaintiff's "father-figure" following the loss of her own father who had died two years earlier. (*Id.* ¶¶ 178–81.) Plaintiff alleges that Harnad developed a "known inappropriate pseudo-romantic relationship" with her on campus, including on the grounds, walkways, corridors, hallways, lawns, parking lots, cafeterias, offices, and classrooms. (*Id.* ¶¶ 185–86.) On campus, Plaintiff claims,

Harnad, *inter alia*, held her hands with "interlocking fingers because that reinforced girlfriend and boyfriend," called himself a libertine, introduced her to other males on campus who "liked nymphets," took her to an "all-male house party" where she was the only female and only minor, touched her legs while sitting, took photos of Plaintiff and her friends, took photos of Plaintiff and her sister posing as hitchhikers, hypnotized Plaintiff, and asked Plaintiff to leave her friends to "get alone time" with him. (*Id.* ¶ 187.) The Court notes that despite passing references to other "adult males" (*see, e.g., id.*) or "unnamed agents" (*see, e.g., id.* ¶ 107), Plaintiff's 58-paged, 200-paragraph SAC fails to identify—by name, description, or otherwise—any individual associated with Princeton who observed or was privy to any of the above incidents. More than 50 years ago, when Plaintiff was asked by an unnamed, identified individual about her relationship with Harnad, she responded, "[h]e is our friend." (*Id.* ¶ 151.)

The Court notes that beyond Plaintiff's alleged sexual molestation and emotional trauma, her young life was marked by significant heartache, including the premature death of her father when she was nine years old, and later, at age 20, the death of her older brother. (*See id.* ¶ 150, 181.) In the aftermath of her alleged assault, Plaintiff alleges that her life continued to unravel: she was found "collapsed and intoxicated" on the sidewalk at age 14, taken into police custody, and detained overnight (*id.* ¶ 143); was sent away to stay with a family friend in Florida (*id.* ¶ 144); was enrolled in a boarding school for "troubled teens and underachievers" in Arizona (*id.*); moved to California with her widowed mother to be with her terminally ill older brother (*id.* ¶ 149); abused alcohol and participated in an intensive Alcoholics Anonymous group (*id.* ¶¶ 154–55); was unable to complete her education (*id.* ¶ 156); endured severe physical pain as "a result of the stress from confronting her abuse" (*id.* ¶ 158); damaged her relationships with family and loved ones (*id.* ¶ 139); and experienced disruptions in her employment (*id.* ¶ 159). Plaintiff alleges suffering from,

*inter alia*, anxiety, depression, and chronic post-traumatic stress disorder, though it is unclear whether she was ever formally diagnosed by a medical professional. (*See id.* ¶ 161.)

On October 26, 2021, Plaintiff filed her first complaint in the Superior Court of New Jersey, Mercer County, against Harnad, Princeton, and multiple John Does, Jane Does, and ABC entities. (ECF No. 1.) Plaintiff filed a corrected complaint on November 2, 2021. (*Id.*) On January 6, 2022, Princeton filed its first Motion to Dismiss. (ECF No. 9.) The Honorable Georgette Castner, U.S.D.J. granted Princeton's Motion, concluding that the Complaint failed to meet the pleading standard under Rule 8(a)(2). (ECF No. 22 at 5.) Plaintiff subsequently filed her First Amended Complaint. (ECF No. 27, "FAC".) Princeton then filed its second Motion to Dismiss. (ECF No. 32.)[3] On June 27, 2024, this Court granted Princeton's Motion to Dismiss, holding, *inter alia*, that Plaintiff had not alleged sufficient facts to demonstrate that Princeton "should have foreseen Harnad's sexual assault of Plaintiff but failed to intervene." (ECF No. 48 at 9.)[4]

Thereafter, in light of the series of prior complaints and the two judicial opinions granting dismissal of same, the Court directed Plaintiff to file a Motion for Leave to File an Amended Complaint, pursuant to Rule 15. (ECF No. 52); *see also* Fed. R. Civ. P. 15(a)(2) (stating that after a party has exhausted its first amendment as a matter of course, "a party may amend its pleading only with the opposing party's written consent or the court's leave"). The Court noted that any amendment would be a "final chance to plead a valid claim." (ECF No. 52.)

Plaintiff filed her Motion for Leave to File a Second Amended Complaint on December 6, 2024. (ECF No. 74.)[5] The putative SAC brings five causes of action: (1) *Respondeat Superior*

---

[3] On May 15, 2023, this case was reassigned to the Undersigned. (ECF No. 30.)

[4] The Court also denied Harnad's Motion to Dismiss, and Counts One and Five of the FAC survived as to Harnad only. (*Id.* at 19.)

[5] On September 12, 2024, Plaintiff, who had been represented by counsel, filed a putative Second Amended Complaint *pro se* and explained that her counsel was withdrawing and that she had no choice but to file a

Theory of Liability (against Princeton); (2) Gross Negligence (against Princeton); (3) Negligent Infliction of Emotional Distress (NIED) (against Princeton); (4) Crimes of a Sexual Nature, Sexual Abuse, and Sexual Assault (against Harnad); and (5) Intentional and Negligent Infliction of Emotional Distress (against Harnad). (*See* SAC at 26, 36, 41, 51, 57.)

Princeton opposed Plaintiff's Motion for Leave to Amend (ECF No. 63; *see also* ECF No. 77), and Plaintiff replied (ECF No. 73). On March 19, 2025, Judge Day issued an R&R, recommending that the Court deny Plaintiff's Motion as futile, preclude her from filing the SAC, and "close[]" "the case against Princeton . . . with prejudice." (R&R at 26.) On April 2, 2025, Plaintiff timely filed her objections. (ECF No. 81.)

## II.    **LEGAL STANDARD**

### A.  REPORT AND RECOMMENDATION

After a magistrate judge issues an R&R on a dispositive issue, a party may object to the R&R within fourteen (14) days of service. If a party objects, the district court "shall make a *de novo* determination of those portions to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge." Local Civ. R. 72.1.(c)(2); *see also United States v. Lightman*, 988 F. Supp. 448, 457 (D.N.J. 1997) (upon objection, a district court reviews a Magistrate Judge's recommendation *de novo*). Federal and local rules require such a review of an R&R only when a party "specifically identif[ies] the portions of the proposed findings, recommendations or report, to which objection is made and the basis of such an objection." Local Civ. R. 72.1(c)(2).

---

complaint on her own behalf. (*See* ECF No. 61-1.) Judge Day subsequently granted Plaintiff two extensions to retain new counsel, the second of which expired on December 11, 2024. (*See* ECF Nos. 66, 72.) On December 6, 2024, Plaintiff filed the now-operative putative Second Amended Complaint, still *pro se*. (ECF No. 74.) To date, no counsel has entered an appearance on Plaintiff's behalf.

As to uncontested portions of the report, the district court is not required to apply a particular standard of review. *Thomas v. Arn*, 474 U.S. 140, 150 (1985) ("It does not appear that Congress intended to require district court review of a magistrate's factual or legal conclusions, under *de novo* or any other standard, when neither party objects to those findings."); *see also Goney v. Clark*, 749 F.2d 5, 7 (3d Cir. 1984). "Even absent objections to the report and recommendation," however, a district court should give "reasoned consideration" to the "dispositive legal issues raised by the report." *Equal Emp. Opportunity Comm'n v. Long Branch*, 866 F.3d 93, 99–100 (3d Cir. 2017) (citing *Henderson v. Carlson*, 812 F.2d 874, 878 (3d Cir. 1987)). District courts, therefore, apply a "clear error" standard to unobjected portions. *See Tice v. Wilson*, 425 F. Supp. 2d 676, 680 (W.D. Pa. 2006). "In order to satisfy this deferential standard, the error must have been 'clear' or 'obvious' and seriously affect the fairness or integrity of the judicial proceedings." *Id.* (citing *United States v. Sargeant*, 171 F. App'x 954, 957 n.4 (3d Cir. 2006)).

### B. RULE 15

Rule 15(a)(2) allows a party to amend its pleading "only with the opposing party's written consent or the court's leave." Fed R. Civ. P. 15(a)(2). Leave to amend should only be denied where it is apparent from the record that "(1) the moving party has demonstrated undue delay, bad faith or dilatory motives, (2) the amendment would be futile, or (3) the amendment would prejudice the other party." *United States ex rel. Schumann v. Astrazeneca Pharm. L.P.*, 769 F.3d 837, 849 (3d Cir. 2014). Additionally, "a District Court has discretion to deny a plaintiff leave to amend where the plaintiff was put on notice as to the deficiencies in his complaint, but chose not to resolve them." *Id.* (citing *Krantz v. Prudential Inv. Fund Mgmt. LLC*, 305 F.3d 140, 144 (3d Cir. 2002)).

"Futility," in the context of a Rule 15 motion, "is governed by the same standard as a [Rule 12(b)(6)] motion to dismiss." *Brown v. Camden City Sch. Dist.*, No. 19-114, 2020 WL 6055070,

at *2 (D.N.J. Oct. 13, 2020); *see also Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000) ("[I]f a claim is vulnerable to dismissal under Rule 12(b)(6), but the plaintiff moves to amend, leave to amend generally must be granted unless the amendment would not cure the deficiency."). Accordingly, to withstand a futility determination, an amended complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (quoting *Twombly*, 550 U.S. at 555).

### III.    DISCUSSION

On April 2, 2025, M.C. filed objections to Judge Day's R&R. (*See* Obj.) The Local Civil Rules require any objection to "specifically identify the portions of proposed findings, recommendations, or report to which objection is made and the basis for such objection." Local Civ. R. 72.1(c)(2). Plaintiff's filing appears not to object to specific portions of the recommendation, but rather seeks to challenge the recommendation as a whole. Specifically, she asserts that: (1) "The Court must consider Plaintiff's Pro Se Status;" (2) "Rule 15(a)(2) Mandates that Leave to Amend Should be Freely Given;" (3) "The corrected Second Amended Complaint (SAC) is Not Futile;" and (4) "Errors in Citation and Form are NOT Moot." (Obj. at 6–7.) Within each purported "objection," Plaintiff lists a series of cases and facts that mostly reiterate her complaint and accompanying briefing, without explaining where, specifically, Judge Day erred in

his R&R. (*See* Obj. at 6–10.) Indeed, Plaintiff does not cite or refer to any provision of the R&R in her Objections.

Nonetheless, the Court, applying a *de novo* standard of review, adopts Judge Day's thorough and well-reasoned 27-paged written R&R in full. The Court's adoption of Judge Day's analysis and conclusions is borne out of agreement, not deference.

Since the claims against Harnad already survived a previous Motion to Dismiss (*see* ECF No. 49), Judge Day analyzed only the three claims asserted against Princeton in the SAC. Judge Day found that, for reasons nearly identical to those set forth in the Court's prior Opinion, Plaintiff fails to allege facts—as opposed to conclusions—that the risk of harm to Plaintiff was foreseeable to Princeton. The Court addresses each claim asserted against Princeton *ad seriatim*.

## A. *RESPONDEAT SUPERIOR* (COUNT ONE)

For the first time in her SAC, Plaintiff attempts to state a claim for "*respondeat superior.*" (SAC ¶¶ 76–109.) This claim suffers from a principal deficiency: *respondeat superior* is not a standalone cause of action; it is only a "legal doctrine under which a court may impose vicarious liability on the employer of a person who has committed some independent tort." *Williams v. Verizon New Jersey, Inc.*, No. 19-9350, 2020 WL 1227663, at *11 (D.N.J. Mar. 12, 2020) (citing *Carter v. Reynolds*, 815 A.2d 460, 463 (N.J. 2003)) ("*Respondeat superior* is not properly understood as a cause of action in its own right."). Because *respondeat superior* is alleged as a standalone claim that is not attached to any particular tort, this amendment to the complaint is futile on its face.[6]

---

[6] Judge Day concluded—and the Court agrees—that even assuming *arguendo* that Harnad was an employee of Princeton, "the SAC alleges no facts permitting a plausible inference that interacting with, sexually grooming, and sexually assaulting non-student minors were actions 'of a kind [that Harnad was] employed to perform.'" (R&R at 8 (citing *Brijall v. Harrah's Atl. City*, 905 F. Supp. 2d 617, 622 (D.N.J. 2012))). The SAC does not support an inference that Princeton could be vicariously liable for Harnad's actions.

Accordingly, the Court adopts Judge Day's recommendation to deny Plaintiff's Motion as to Count One.

### B. GROSS NEGLIGENCE (COUNT TWO)

In dismissing Plaintiff's FAC in part, the Court previously explained that Plaintiff could only bring a claim for gross negligence—not "simple negligence"—because New Jersey's Charitable Immunity Act ("CIA") bars simple negligence claims against nonprofits organized for educational purposes. (*See* ECF No. 49 at 8–9); *see also K.L. v. Rutgers, State Univ. of New Jersey*, No. 21-1508, 2022 WL 2207830, at *2 (3d Cir. 2022). Plaintiff therefore attempts to assert a claim of gross negligence in her SAC. (SAC ¶¶ 110–29.) This attempt is unsuccessful, as Judge Day indicates, because Plaintiff has not sufficiently alleged that Princeton owed a duty to Plaintiff.

To state a claim for gross negligence, the first step is to establish that the defendant owed a duty of care to the plaintiff, which "is a question of law that must be decided by the court." *Sander v. HR Tr. Servs.*, No. 08-1383, 2009 WL 3055368, at *2 (D.N.J. Sept. 21, 2009) (cleaned up). "Foreseeable risk is the indispensable cornerstone of any formulation of a duty of care. While foreseeability alone does not create a duty, there can be no duty unless harm to another is reasonably foreseeable." *Doe ex rel. Doe v. Small*, 654 F. Supp. 3d 376, 395–96 (D.N.J. 2023) (cleaned up) (quoting *Dunphy v. Gregor*, 642 A.2d 372, 376 (N.J. 1994) and *J.S. v. R.T.H.*, 693 A.2d 1191, 1193 (N.J. Ct. App. Div. 1997), *aff'd* 742 A.2d 924 (N.J. 1998)). Indeed, since foreseeability is the "indispensable cornerstone" of duty of care, any claim for gross negligence that Plaintiff asserts here must sufficiently allege foreseeability. *See id.*

Plaintiff appears to object to Judge Day's foreseeability analysis, citing the seminal tort case of *Palsgraf v. Long Island Railroad Co.* for the proposition that "foreseeability focuses on whether harm of the general type was a likely result of the defendant's actions, not whether the

exact sequence of events was predictable." (Obj. at 8 (citing 162 N.E. 99 (1928).) Plaintiff argues, "[i]t does not matter that the University and all of its entities and actors were unaware of Defendant Harnad's predatory practices on the Princeton University campus. The campus was a sexually hostile and misogynistic environment." (*Id.*) Plaintiff's argument fails to explain why or how the campus environment put the University on notice of a "harm of the general type" that Plaintiff claims. Plaintiff repeatedly cites to newspaper articles (which the Court notes largely involve students' own musings on co-education at Princeton, and incidents of alcohol and drug use in and around the University) to purportedly establish that Princeton's campus in the 1970s was an environment primed for sexual assault. But this assertion, like those in Plaintiff's prior complaints fails to allege sufficient facts to show that Princeton "was in a position to know or have reason to know, from past experience, that there [was] a likelihood of conduct on the part of [a] third person [] that was likely to endanger" Plaintiff. *See K.J. v. J.P.D.*, 659 F. Supp. 3d 471, 479 (D.N.J. 2023) (quotation omitted) (alterations in original).

As Judge Day explains, Plaintiff ostensibly advances two foreseeability theories. *First*, Plaintiff alleges that Harnad groomed her "in plain sight" on Princeton's campus, and therefore it was reasonably foreseeable to Princeton employees (and, by extension, Princeton itself), that she would be harmed. (R&R at 11.) *Second*, Plaintiff alleges that Princeton knew its campus was unsafe for minors both before and after its adoption of the "Open Campus" policy. (*See* R&R at 16.)

Judge Day correctly concluded that Plaintiff's allegations of public acts of "grooming" on Princeton's campus do not establish foreseeability. Since the Court had already dismissed Plaintiff's claims in the FAC on foreseeability grounds (*see* ECF No. 49 at 9–12), Judge Day analyzed a series of new allegations averred in the proposed SAC that attempt to establish Harnad's

behavior of grooming Plaintiff "in plain sight." (R&R at 13.) In particular, Plaintiff alleges, in the SAC, that Harnad "pick[ed] up and dropp[ed] off children," "target[ed], stalk[ed], groom[ed], isolate[ed], and singl[ed] out" Plaintiff, ate with Plaintiff in the cafeteria, took Plaintiff around Princeton's campus, utilized a classroom to hypnotize Plaintiff, sat with his legs touching Plaintiff's while on campus, smoked marijuana with Plaintiff near the "Fountain of Freedom" on Princeton's campus, and introduced Plaintiff "to another adult male on campus who also liked nymphets," although there is no indication that this "male" was in any way affiliated with Princeton. (SAC at ¶¶ 95, 99, 180, 187.) Toward that end, the Court reiterates that Plaintiff has neither identified nor described any student, faculty or staff member, or any other individual with any relationship to Princeton who witnessed, heard, or otherwise knew about any of the above alleged incidents.

In addition, although the above actions could be construed as grooming, Plaintiff does not specify whether the majority of them happened in public or in private. And, just like in the case of N.S., the Court finds that none of these allegations establish the required plausible inference that Princeton had any "particular knowledge or special reason to know" that Harnad was engaging in precursory sexual grooming. *See Child M. v. Fennes*, No. A-873-15T2, 2016 WL 4473253, at *5 (N.J. Super. Ct. App. Div. Aug. 25, 2016). Even for the actions that *did* allegedly take place on campus, the SAC does not allege that any person affiliated with the University saw or heard the grooming interactions between Harnad and Plaintiff. (*See* R&R at 15.)

Plaintiff also alleges without context that "[w]hen asked about Defendant Harnad, Plaintiff, M.C. stated, '[h]e is our friend.'" (SAC ¶ 151.) This allegation does not explain who asked the question, whether the questioner was affiliated with the University, whether this interaction happened on campus, or even whether the questioning occurred around the time that M.C. was

being allegedly groomed. Furthermore, Plaintiff's response, that Harnad was her "friend," further supports the proposition that no one on Princeton's campus—even someone who might have asked a direct question about the relationship—would have any reason to know that any interaction was problematic or sexualized.

Plaintiff's second theory of foreseeability, that Princeton's adoption of an "Open Campus" policy made her sexual assault foreseeable, is equally unavailing. The thrust of Plaintiff's theory is that the "Open Campus" policy, which allowed members of the public onto Princeton's property, invited a series of criminal activities that put Princeton on notice of more crime, including Plaintiff's sexual assault. (*See* SAC ¶¶ 55–60.) Plaintiff advanced this same theory in her FAC, relying on *Clohesy v. Food Circus Supermarkets, Inc.*, a case where the New Jersey Supreme Court assigned a duty of care to protect invitees from foreseeable criminal activity because the town police had recorded around 60 criminal incidents either on or near the defendant's premises in the prior two-and-a-half years. (*See* ECF No. 42 at 16–17); 694 A.2d 1017, 1028–30 (N.J. 1997). The Court previously rejected Plaintiff's analogy to *Clohesy* because an "unrelated spree of criminal incidences—involving property crimes and other non-sexual violence—on Princeton's campus do[es] not establish the [University's] constructive knowledge of sexual assault, and thus does not make Harnad's criminal acts foreseeable." (ECF No. 49 at 11.)

To attempt to cure the deficiency, Plaintiff purports to include additional allegations sufficient to demonstrate that "the egregious dangers were reasonably foreseeable given the University's 'Open Campus' policy and their omissions of any care." (ECF No. 62 at 3–4.) These allegations include references to a series of newspaper articles, most of which pre-date the 1970 implementation of the "Open Campus" policy, in hopes of more clearly analogizing the present case to *Clohesy*. (*See* SAC ¶¶ 103–10.) In particular, these articles attempt to paint a picture of

13

sexual frustration and sexual inexperience on the male-dominated Princeton campus, and the recklessness with which Princeton opened its gates to minors given this supposedly well-documented context. (*See id.* ¶¶ 36–46.)

In his R&R, Judge Day catalogued the thirteen articles cited and discussed by Plaintiff in her SAC, and concluded that "the incidents alleged are still not sufficient in number, frequency, or degree to support an inference that it was foreseeable to Princeton that M.C. was at risk of being groomed on campus and later sexually assaulted by Harnad off campus." (R&R at 20.) The Court agrees. Indeed, despite the reporting on tensions between Princeton students and Princeton residents, sexual frustration stemming from a predominantly-male campus, and reportedly increased drug use associated with the 1960s and 1970s, M.C. asserts no allegations that any person—let alone local minors—had been the subject of sexual assault on campus. (*See* SAC at ¶¶ 37–59.) The newspaper articles on which Plaintiff relies, the majority of which were penned by Princeton undergraduate students, consist primarily of reflective op-eds or inquiries into the experience of male students on Princeton's campus in the years before the University accepted undergraduate applications from women; reporting on drug- and alcohol-related concerns and arrests; discussions of dorm-room thievery and muggings in the campus environs; and dispatches from local town meetings. (*See generally* SAC at Exs. A–M.) These reports fail to demonstrate that Princeton was on the type of notice described in *Clohesy*, which involved nearly 60 incidents, of similar nature, in a short span of time. *See* 694 A.2d at 1021, 1027.

Plaintiff has failed to allege that her sexual assault was foreseeable to Princeton. She has established neither that Princeton knew or had constructive knowledge that she was being groomed in plain sight, nor that Princeton was on sufficient notice of criminal activity as a result of the crimes that occurred around the time the "Open Campus" policy was adopted, none of which were

sexual in nature, let alone with a minor. Accordingly, the Court adopts Judge Day's R&R to deny Plaintiff's Motion as to Count Two.

### C. NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS (COUNT THREE)

Plaintiff's final claim as to Princeton is Negligent Infliction of Emotional Distress ("NIED"). This count, like the Gross Negligence claim, *supra*, turns on foreseeability. "Recovery for negligent infliction of emotional harm requires that it must be *reasonably foreseeable* that the tortious conduct will cause genuine and substantial emotional distress or mental harm to average persons." *Cole v. Laughery Funeral Home*, 869 A.2d 457, 465 (N.J. Super. Ct. App. Div. 2005) (emphasis added). For the reasons stated above, Plaintiff has failed to allege that Harnad's tortious conduct was reasonably foreseeable to Princeton.

The Court previously dismissed Plaintiff's claims for NIED in her FAC, concluding that the claim "fails as to [Princeton] for the same reasons as Plaintiff's premises liability claims do." (ECF No. 49 at 16.) In an attempt to cure her deficient pleading, Plaintiff now alleges that Princeton had a duty to protect her, as an unsupervised girl, against a campus environment that was "chaotic," "dangerous," "sexually hostile" and "predominantly male." (SAC ¶¶ 132–34, 137.) She alleges that but for Princeton's invitation to minors via its "Open Campus" policy, she "would have never been sexually abused by Harnad." (SAC ¶ 157; *see also id.* ¶ 163.) Again, Plaintiff references the series of newspaper articles to support her allegations. (*See id.* ¶¶ 29–31, 37–59, 64, 66.) Plaintiff's allegations here do not differ in any meaningful way from the allegations in Count Two, and, for the same reasons, fail to state a claim that the harm to Plaintiff was reasonably foreseeable to Princeton. The Court adopts with Judge Day's conclusion and recommendation to deny Plaintiff's Motion as to Count Three.

### D. PLAINTIFF'S REMAINING OBJECTIONS

The Court now turns to Plaintiff's remaining objections which do not squarely relate to any specific portion of Judge Day's factual or legal analysis.

Plaintiff's first objection is that the SAC should not be dismissed because the Court "must consider Plaintiff's *pro se* status." (Obj. at 6 (cleaned up) (citing *Haines v. Kerner*, 404 U.S. 519 (1972).) To be clear, Judge Day explicitly acknowledged Plaintiff's *pro se* status, and accordingly construed her pleading liberally. (*See* R&R at 12.) Even so, a *pro se* plaintiff "still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (citations omitted). Both Judge Day's R&R and the Court's analysis above evaluated the legal sufficiency of the pleading based solely on whether she had alleged sufficient facts to state her various claims, a standard with which all plaintiffs, regardless of status, are required to comport. Additionally, the procedural history of this case—especially since Plaintiff "discontinued her relationship" with her attorney (Obj. at 3.)—demonstrates repeated accommodation and leniency on the part of both the Court and Judge Day.  This objection is accordingly overruled.

Plaintiff's second and third objections both appear to invoke the issue of futility. Plaintiff argues that denying her Rule 15 motion contravenes the Rule's directive to courts to "freely grant leave when justice so requires." *See* Fed. R. Civ. P. 15(a)(2). Of course, this directive is not unlimited, and leave to amend is not required when amendment of the complaint would be futile. *See Simmermon v. Gabbianelli*, 932 F. Supp. 2d 626, 635 (D.N.J. 2013). To determine whether the amendment of a pleading would be futile, the Court deploys "the same standard of legal sufficiency as applies under Rule 12(b)(6)." *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997). For the reasons set forth at length above, the Court determines

that Plaintiff has not alleged sufficient facts to state any of the claims asserted against Princeton, which makes her putative pleading futile.

In aid of her argument against futility, Plaintiff also asserts that "the SAC presents new factual allegations that establish valid claims under Title IX [of the Education Amendments of 1972], 42 U.S.C. § 1983, and 18 U.S.C. § 2255." (Obj. at 7, 8.) These three federal claims do not appear in the headers of any of Plaintiff's causes of action, and indeed are only referenced in passing in the introduction to Plaintiff's 58-paged, 200-paragraph SAC. (*See* SAC ¶¶ 8, 10, 11.) Instead, in a threadbare fashion, Plaintiff cites, for the first time, a random assortment of federal statutes that are completely untethered from her allegations, contain no factual support, and are wholly inapplicable to her case as a matter of law. Nonetheless, for completeness, the Court analyzes the viability of each claim.

*First*, Plaintiff lacks standing to sue under Title IX. Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subject to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681. Although the statute is primarily intended to protect students, "the plain language of Title IX extend[s] statutory standing to (i) employees of an education program or activity . . . and (ii) those who are denied access to an 'education program or activity.'" *Oldham v. Pennsylvania State Univ.*, No. 20-2364, 2022 WL 1528305, at *18 (M.D. Pa. May 13, 2022) (quoting *Conviser v. DePaul Univ.*, 532 F. Supp. 3d 581, 592 (N.D. Ill. 2021) (surveying caselaw)). A plaintiff seeking to establish standing based on an inability to access an education program or activity must be "so closely tied to a university that she is essentially a student of that university." *Id.* (cleaned up). Here, Plaintiff, who was only 11 to 13 years old during

the alleged conduct, obviously does not allege that she was a student or employee of Princeton or "essentially a student" of Princeton. (*See* SAC ¶ 131.)[7]

*Second*, any claim pursuant to 42 U.S.C. § 1983 must fail because Section 1983 only applies to violations of constitutional rights by *state* actors, and Plaintiff has not alleged that Princeton, a "private nonprofit educational institution" (SAC ¶ 21), is a state actor. *See Swartz v. Bd. of Trs. At Univ. of Pa.*, No. 22-1568, 2022 WL 17718343, at *2 (3d Cir. Dec. 15, 2022) (holding that plaintiff failed to state a Section 1983 claim against Princeton University because it is not a state actor, despite receiving funding from the state (citing *Rendell-Baker v. Kohn*, 457 U.S. 830, 840 (1982)).

*Third*, Plaintiff attempts to invoke 18 U.S.C. § 2255 to "seek civil remedies for sexual abuse as a child." (SAC ¶ 10.) However, Section 2255 alone does not create a cause of action. *See Jackson v. Rosen*, No. 20-2842, 2020 WL 3498131, at *7 (E.D. Pa. June 26, 2020). Instead, the statute is a vehicle to provide civil remedies to those who were victims of one of fourteen enumerated federal crimes. *See* 18 U.S.C. § 2255. None of these enumerated crimes applies to Plaintiff, and she does not attempt to allege that they do. For example, two of the enumerated crimes on which Plaintiff would most likely rely apply only "in special maritime or territorial jurisdiction of the United States or in a Federal prison." *See* 18 U.S.C. §§ 2242 (Sexual Abuse),

---

[7] In any event, Plaintiff alleges no facts relating to this Title IX claim; the entirety of her Title IX allegation reads: "[t]he conduct of Princeton University in allowing such an environment to exist constitutes sex-based discrimination and harassment, violating Title IX of the Education Amendments of 1972." (*Id.* ¶ 11.) This conclusory allegation is devoid of any factual basis sufficient to state a claim.

2243 (Sexual Abuse of a Minor). [8] Accordingly, Plaintiff's SAC does not state a claim pursuant to 18 U.S.C. § 2255.

In sum, following a *de novo* review of Plaintiff's objections, the Court is in complete agreement with Judge Day's exhaustive analysis of Plaintiff's proposed Second Amended Complaint. Accordingly, Plaintiff's objections are overruled, and the R&R is adopted in full.

---

[8] All of the enumerated crimes are inapplicable, as Plaintiff does not allege any facts sufficient to show that she was a victim of a crime covered by 18 U.S.C. § 2255. *See* 18 U.S.C. § 1589 ("forced labor"); 18 U.S.C. § 1590 ("trafficking with respect to peonage, slavery, involuntary servitude, or forced labor"); 18 U.S.C. § 1591 ("sex trafficking of children by force, fraud, or coercion" "in or affecting interstate or foreign commerce"); 18 U.S.C. § 2241(c) ("cross[ing] a State line with the intent to engage in a sexual act with a person who has not attained the age of 12 years"); 18 U.S.C. § 2251 ("sexual exploitation of children" "for the purpose of producing any visual depiction of such conduct" "in or affecting interstate or foreign commerce"); 18 U.S.C. § 2251A ("selling or buying of children"); 18 U.S.C. § 2252 ("certain activities relating to material involving the sexual exploitation of minors"); 18 U.S.C. § 2252A ("certain activities relating to material constituting or containing child pornography"); 18 U.S.C. § 2260 ("production of sexually explicit depictions of a minor for importation into the United States"); 18 U.S.C. § 2421 (transportation of an individual "in interstate or foreign commerce . . . with intent that such individual engage in prostitution, or in any sexual activity for which any person can be charged with a criminal offense"); 18 U.S.C. § 2422 ("coercion and enticement" "to travel in interstate or foreign commerce"); 18 U.S.C. § 2423 (transportation of minors "in interstate or foreign commerce" "with intent to engage in criminal sexual activity").

## CONCLUSION

For the foregoing reasons, Judge Day's R&R (ECF No. 80) is **ADOPTED** in full.

Plaintiff's Motion for Leave to File a Second Amended Complaint (ECF No. 62, 74) is **DENIED.**

All claims as to Defendant Princeton are **DISMISSED WITH PREJUDICE.** An appropriate

Order follows.

_____
**ROBERT KIRSCH**
**UNITED STATES DISTRICT JUDGE**

Dated: April 21, 2025